**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**EMMANUEL KWAKU BOAMAH,**

    **Petitioner,**

        **v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

        **CASE NO. 2:16-CV-00996**
        **CRIM. NO. 2:13-CR-126(2)**
        **Judge Michael H. Watson**
        **Magistrate Judge Kimberly A. Jolson**

**ORDER AND REPORT AND RECOMMENDATION**

Petitioner brings the instant Motion for Emergency Hearing for Petition to Vacate. (Doc. 151). The matter is before the Court on its own motion pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that all of Petitioner's claims, with the exception of his claim that his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), be **DISMISSED.**

The United States of America is **DIRECTED** to file a response to Petitioner's claim under *Zadvydas* in accordance with the provisions of Rule 5(a), Rules Governing Section 2255 Cases in the United States District Courts within twenty-one (21) days. Petitioner may file a traverse within fourteen (14) days thereafter.

## I.    FACTS AND PROCEDURAL HISTORY

On April 22, 2014, pursuant to the terms of his negotiated Plea Agreement, Petitioner pleaded guilty to conspiracy to commit access device fraud, in violation of 18 U.S.C. § 371. (Docs. 82, 93). On September 3, 2014, the Court imposed 16 months imprisonment followed by

three years supervised release.  (Doc. 125).  Petitioner appealed, but the action was voluntarily dismissed on February 6, 2015.  (Doc. 150).

On October 17, 2016, Petitioner filed the instant habeas corpus petition.  He states that he has been in the custody of Immigration and Customs Enforcement ("ICE") since February 9, 2016, pursuant to an order of removal issued on September 27, 2016, based on his underlying conviction in this case.  (Doc. 151 at PAGEID #521).  Petitioner alleges that he held a valid United States passport at the time of his guilty plea and thus had no reason to believe that he was not an American citizen or would be subject to deportation as a result of his guilty plea. Petitioner further contends that the prosecutor improperly failed to disclose such information and maintains that he would not have pleaded guilty had he been informed of the potential immigration consequences of his guilty plea.  Petitioner indicates that he did not learn until December 21, 2015—after being released from prison—that his passport was being revoked as issued in error.  He thus seems to challenge his conviction under 28 U.S.C. § 2255.  Petitioner additionally seeks relief under the All Writs Act of 28 U.S.C. § 1651.  (*See* PageID# 521, 526). Finally, Petitioner asserts that his continued detention violates *Zadvydas v. Davis*, 533 U.S. at 678, because his removal to Ghana is not significantly likely to occur in the reasonably foreseeable future in view of his status as an American citizen.

## II.    DISCUSSION

### A.  Challenges To Conviction And Deportation Order

#### a.  Statute of Limitations

To the extent that Petitioner raises a claim challenging the validity of conviction or guilty plea, under which he currently remains "in custody," 28 U.S.C. § 2255 controls.  The record shows that § 2255(f)'s one-year statute of limitations bars this claim.  The statute provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  Applying provision § 2255(f)(1), Petitioner's judgment of conviction became final in February 2015, when the Court of Appeals dismissed Petitioner's appeal at his request.  (Doc. 150).  Petitioner nonetheless waited more than one year and eight months later, until October 2016, to file this action.

Petitioner, however, argues that his claim is timely by application of § 2255(f)(4), because he did not learn that he could suffer adverse immigration consequences as a result of his guilty plea until December 21, 2015, when authorities advised him that his passport was being revoked as issued in error. (PageID# 522).  Petitioner further claims that before that moment, he had no reason to doubt his status as a lawful citizen of the United States.

Petitioner has the burden to establish that he exercised due diligence in discovering the factual predicate for his claim.  *Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013) (citing *Johnson v. United States*, 457 F. App'x 462, 468 (6th Cir. 2012) (internal citation omitted).  "Section § 2255(f)(4)'s requirement that a petitioner exercise reasonable diligence to discover the factual predicate underlying his claims does not require a petitioner repeatedly to

3

seek out information that the government unconstitutionally failed to disclose despite having notice that petitioner sought the very information suppressed." *Id*. Here, the record demonstrates that Petitioner repeatedly acknowledged that he understood that he may be subject to deportation as a result of his guilty plea, but nonetheless wanted to plead guilty. In fact, he was specifically advised prior to sentencing of the uncertainty of his United States citizenship status.

On March 10, 2014, Petitioner signed a Plea Agreement indicating that he understood that if he was an alien, his guilty plea may have immigration consequences, and affirming that he wanted to plead guilty "regardless of any immigration consequences that may result from his guilty plea, even if the consequence is his automatic deportation from the United States." (Doc. 82, PageID# 225.) The prosecutor reiterated these same terms of Petitioner's Plea Agreement at the time of the guilty plea hearing. (Doc. 138, PageID# 458). Petitioner again acknowledged his agreement to such terms in the Presentence Investigation Report, ¶ 28. He had been born in Ghana in 1984 and moved to the United States with his mother in 1996. *Id*. at ¶ 84. The probation officer writing the Presentence Investigation Report contacted ICE to clarify whether Petitioner would be subject to deportation proceedings as a result of his conviction. She explicitly indicated "[t]hey do not believe Boamah is a naturalized citizen because his mother became a citizen after [he] was eighteen years old." *Id*. at ¶ 88. The Presentence Investigation Report further provided that a condition of Petitioner's supervised release could include the requirement that he be deported and remain outside of the United States, or be delivered to immigration officials for deportation. *Id*. at ¶ 112. At the time of the Presentence Investigation Report, Petitioner's immigration status was not verified. *Id*. at ¶ 128. On September 3, 2014, the date of Petitioner's sentencing hearing, Petitioner acknowledged that he had been provided

with more than ten days to review the Presentence Investigation Report.  Transcript (Doc. 139, PageID# 472.)  The Court again addressed the issue of Petitioner's uncertain immigration status at that time.  Petitioner again indicated that he understood that he could be deported to Ghana as a result of his conviction and guilty plea.  Defense counsel had not been able to confirm Petitioner's lawful immigrant status, but represented that Petitioner desired to "go forward" "either way."

> COURT:  Have we been able to clear up whether or not Mr. Boamah is a citizen, a naturalized citizen of the United States?
>
> MS. SHOEMAKER:  Your Honor, I checked with Immigration and Customs Enforcement and they weren't able to confirm.  And I also checked with probation and I don't believe that we do have any confirmation of that. . . .
>
> COURT:  Mr. Boamah, you understand that there is some risk that you will be deported back to Ghana as a result of this conviction?
>
> DEFENDANT:  Yes.
>
> ***
>
> I don't have any problem with that.  I had to return my passport over to – as a requirement, turn my passport. . . and they gave me a ticket number to retain my passport once my case is over and I will have to write a letter to the Judge and see if the Judge can return my passport back to me.
>
> COURT:  The reason I raise it is because it's unclear from the presentence report.  The information in the presentence report indicates that his mother obtained naturalized status after he was 18.
>
> MR. SHERMAN:  He believes he was underage at the time she obtained naturalized status.  Either way, we're going to go forward today. . . . The only issue is no one can say yes or no about it.
>
> COURT:  Right.  I raise it because it's raised in here.
>
> MR. SHERMAN:  I think you are correct.

(PageID# 473-74).

Therefore, the record contradicts Petitioner's allegation that he could not have discovered the factual predicate for his claim that his guilty plea could result in his deportation from the United States prior to the date that immigration authorities advised him that his United States passport was being revoked. To the contrary, the record shows that Petitioner was well aware of this fact at least as early as September 2014 when he was sentenced. Further, Petitioner does not indicate that he made any efforts to ascertain his immigration status nor did he act diligently in this regard. For example, Petitioner does not allege any attempt that he made during the more than one year and three month period from the date of his sentencing hearing until December 21, 2015, when he claims he first learned that ICE had determined that he was not a United States citizen, to determine his immigration status. The record therefore undermines Petitioner's current allegation and militates against a conclusion that he acted diligently. Accordingly, the Court concludes that Petitioner has failed to establish that the start date of the running of the statute of limitations should be extended under 28 U.S.C. § 2255(f)(4).

The record likewise fails to show that the statute of limitations should be equitably tolled. A statute of limitations may be equitably tolled if a litigant's failure to meet the filing deadline unavoidably arose from circumstances beyond his control. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Humphreys v. Memphis Brooks Museum of Art, Inc*., 209 F.3d 552, 560–61 (6th Cir. 2000). The doctrine of equitable tolling is only sparingly applied, however; a petitioner is entitled to the benefit of the doctrine only if he shows that he has diligently pursued his rights and that some extraordinary circumstance stood in his way and prevented a timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A petitioner bears the burden of establishing that he is entitled to the benefit of

equitable tolling.  *United States v. Cardosa*, No. 09–11–ART; 13–cv–7273, 2013 WL 4441990, at *3 (E.D. Ky. Aug.14, 2013).  Petitioner has failed to meet this burden here, and the Court concludes that the one-year statute of limitations of § 2255(f) bars Petitioner's challenge to his guilty plea.

> b.  *Jurisdiction*

Related to this claim, Petitioner also appears to argue that immigration authorities have wrongfully ordered his removal from the United States in denial of his due process rights as a United States citizen.  However, "jurisdiction to consider any order of removal is vested exclusively in the appropriate court of appeals."  *Krninova v. Holder*, No. 2:09-cv-577, 2010 WL 1253972, at *1 (S.D. Ohio March 23, 2010).

> The REAL ID Act, 8 U.S.C. § 1252, confers on the court of appeals the exclusive jurisdiction to review a removal order issued to any alien:
>
>> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section. For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).
>
> 8 U.S.C. § 1252(a)(5) (emphasis added).
>
> The REAL ID Act also expressly divests district courts of jurisdiction over any challenge to a removal order:

7

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

*Id*. at *1-2.

Whether Petitioner's challenge to the removal order issued against him is meritorious can be determined only in the court of appeals, and this Court lacks jurisdiction to entertain such claim.

### B.  The All Writs Act

Petitioner additionally seeks relief under the All Writs Act of 28 U.S.C. § 1651, specifically requesting a writ of *coram nobis*. (*See* PageID# 521, 526). "*Coram nobis* is an extraordinary writ . . . ." *United States v. Waters*, 770 F.3d 1146, 1146 (6th Cir. 2014) (quotations omitted). A petitioner seeking such relief must establish: "(1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Hanna v. United States*, 559 F. App'x 75, 75 (2d Cir. 2014) (quotations omitted); *Frasier v. United States*, 343 F. App'x 985, 986 (5th Cir. 2009) (same); *United States v. Pearl*, 288 F. App'x 651, 653 (11th Cir. 2008)

8

(same); *Morgan,* 346 U.S. at 512 (holding that a *coram nobis* request may be considered where "no other remedy [is] available and sounds reasons exist for failure to seek appropriate earlier relief"); *United States v. Nyhuis*, 40 F. App'x 80, 81 (6th Cir. 2002) (noting that "the doctrine of laches applies to *coram nobis* proceedings" and that "[t]o avoid the bar, a *coram nobis* petitioner must demonstrate that sound reasons exist for not seeking appropriate relief previously").  A writ of error *coram nobis* "is so extraordinary that it is used only in 'circumstances compelling such action to achieve justice.'" *Id.* (quoting *United States v. Morgan*, 346 U.S. 502, 511 (1954)).

The undersigned finds no such extraordinary circumstances here.  Moreover, "it would be senseless to suppose that Congress permitted [petitioners] to pass through [] closed door simply by changing the number 2241 to 1651 [the All Writs Act] on their motions." *United States v. United States v. Logan*, 22 F Supp. 2d 691, 694 (W.D. Mich. 1998) (internal quotations omitted). As such, a writ of *coram nobis* is not warranted here.

### C.  Zadvydas v. Davis

Finally, Petitioner challenges the constitutionality of his continued detention under 28 U.S.C. § 2241(a) and the United States Supreme Court's decision in *Zadvydas v. Davis*. (PageID# 528).

Pursuant to 28 U.S.C. § 2241(a) a writ "of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  Section 2241 affirmatively grants federal courts the power to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.' " *Rice v. White,* 660 F.3d 242, 249 (6th Cir. 2011) (quoting § 2241(c)).  The Supreme Court has affirmed the jurisdiction of courts to consider habeas claims arising out of immigration detention. *See Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003) (citing *Zadvydas v.*

*Davis*, 533 U.S. at 688). "Despite statutory restriction of court review regarding many immigration matters, a petition for writ of habeas corpus under section 2241 is appropriate for raising statutory and constitutional challenges to post-removal detention by the ICE." *Estenor v. Holder*, No. 1:11-cv-743, 2011 WL 5572596, at *2 (W.D. Mich. Oct. 24, 2011)(citing *Zadvydas* 533 U.S. at 688; *Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003)). *See also Jiang Lu v. U.S. ICE*, 22 F.Supp.3d 839, 841 (N.D. Ohio 2014)("Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal.") (citing *Demore v. Kim*, 538 U.S. 510, 517–18 (2003)).

Once an order of removal becomes administratively final, the Attorney General "shall detain" and remove the alien within ninety days. *Mulla v. Adducci*, No. 16-10254, -- F.Supp.3d --, 2016 WL 1436697, at *2 (E.D. Mich. April 12, 2016)(citing 8 U.S.C. § 1231(a)(1)(A), (a)(2). However, the government may detain an inadmissible or criminal alien beyond the ninety-day statutory removal period. *See id*; 8 U.S.C. 1231(a)(6); *Jiang Lu v. U.S. ICE*, 22 F.Supp.3d at 841. In *Zadvydas*, 533 U.S. 678, the Supreme Court interpreted this provision to authorize the continued detention of the alien only as long as "reasonably necessary" to effectuate the alien's removal. *Jiang Lu v. U.S. ICE*, 22 F.Supp.3d at 842 (citing *Zadvydas*, at 689, 699; *Clark v. Martinez*, 543 U.S. 371, 373 (2005)). The detention of an alien subject to removal due to a criminal conviction will be presumptively reasonable for up to six months. *Mulla v. Adducci*, 2016 WL 1436697, at *3 (citing *Zadvydas*, 533 U.S. at 701). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, at 699. "[T]he Supreme

Court has clarified that the *Zadvydas* due process analysis applies only if a danger of indefinite detention exists and there is no significant likelihood of removal in the reasonably foreseeable future." *Jian Lu v. U.S. ICE*, 22 F.Supp.3d at 843 (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)). "Merely alleging that a date for travel has not yet been set, is insufficient to demonstrate indefinite detention." *Id.*

Petitioner asserts that he has been in the custody of ICE for more than nine months— since February 9, 2016 (PageID# 521), and that his removal to Ghana is not significantly likely to occur in the reasonably foreseeable future. However, Petitioner also alleges that his Final Order of Deportation is dated September 27, 2016—not even two months ago. This Court cannot determine from the current record the basis for Petitioner's alleged nine-month detention and, for that reason, **DIRECTS** Respondents to file a response as to this particular claim.

## III.     CONCLUSION

Therefore, the Magistrate Judge **RECOMMENDS** that all of Petitioner's claims, with the exception of his claim that his continued detention violates *Zadvydas,* be **DISMISSED**.

The United States of America is **DIRECTED** to file a response to Petitioner's claim under Zadvydas in accordance with the provisions of Rule 5(a), Rules Governing Section 2255 Cases in the United States District Courts within twenty-one (21) days.

Petitioner may file a traverse within fourteen (14) days thereafter.

**Procedure on Objections to Report and Recommendation**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo*

determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


Date: November 18, 2016                                      /s/ Kimberly A. Jolson
                                                            Kimberly A. Jolson
                                                            United States Magistrate Judge